UNITED STATES DISTRICT COURT                                              C/M
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
MICHAEL PAPAS,                                              :
                                                            :
                           Petitioner,                      :    **MEMORANDUM**
                                                            :    **DECISION AND ORDER**
          - against -                                       :
                                                            :    15-cv-1082 (BMC)
                                                            :
PAUL CHAPPIUS, JR., Superintendent, Attica                  :
Correctional Facility,                                      :
                                                            :
                           Respondent.                      :
----------------------------------------------------------- X

**COGAN**, District Judge.

Petitioner *pro se* seeks habeas corpus relief pursuant to 28 U.S.C. § 2254 from his state-court conviction for first-degree attempted assault. The facts will be set forth below as they relate to each of petitioner's points of error, but to summarize, plaintiff assaulted a worker at a construction site with a hammer. Petitioner stood out because he was wearing a white hooded sweatshirt and two construction workers saw a person wearing a white hooded sweatshirt strike the victim with a hammer. One of those construction workers alerted others, who chased and apprehended petitioner until the police arrived and took him into custody. After his conviction, petitioner was sentenced as a mandatory persistent violent felony offender to 23 years to life imprisonment.

Petitioner raises two points of error in his habeas corpus petition. First, he contends that the trial court improperly dealt with the issue of motive by (1) precluding his counsel from arguing lack of motive in his summation; and (2) instructing the jury that motive was not an element of the crime without also instructing them that they could consider absence of motive in determining whether petitioner actually committed the crime. Second, petitioner

contends that his trial counsel was ineffective because he (1) failed to move for dismissal on the ground that the verdict was against the weight of evidence and legally insufficient to support the verdict; (2) failed to object to certain statements in the prosecutor's closing; and (3) failed to adequately investigate the case. Neither of these points have merit and, accordingly, the petition is denied.

## I. Improper Treatment of Lack of Motive

During his summation, defense counsel stated that "[m]issing from this case . . . is some kind of motive." The prosecution objected and the trial court sustained the objection, instructing the jury that motive was not an element of the crimes charged. As part of its final charge to the jury, the trial court repeated that instruction in similar words. (There is no dispute that motive was not an element of the charged crimes.)

In his represented brief on direct appeal, petitioner contended that the trial court's sustaining of the objection, and the reformulation of its instruction on motive in the final charge, without also advising the jury that it could consider lack of motive in determining whether it was petitioner who attacked the victim, was error. The Appellate Division held that

> While we agree that the Supreme Court improvidently exercised its discretion in sustaining the prosecutor's objections to the argument, the error was harmless, as the evidence of the defendant's guilt was overwhelming, and there is no significant probability that the error contributed to the defendant's conviction. The defendant's contentions that the Supreme Court gave incomplete instructions with respect to the issue of motive and that the errors deprived him of his constitutional right to a fair trial are unpreserved for appellate review.

People v. Papas, 110 A.D.3d 1102, 1102, 974 N.Y.S.2d 262, 262-63 (2nd Dep't 2013) (internal citations omitted), leave to appeal denied, 22 N.Y.3d 1201, 986 N.Y.S.2d 422 (2014). Because the Appellate Division resolved the summation objection differently than the objection to the

2

jury charge, they must be analyzed separately under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.

   *A. Summation Objection*

The Supreme Court has outlined the standard for federal habeas corpus review of state-court findings of harmless error in Brecht v. Abrahamson, 507 U.S. 619 (1993), Fry v. Pliler, 551 U.S. 112 (2007), and, more recently, in Davis v. Ayala, 135 S. Ct. 2187 (2015). When a federal court reviews a state-court finding of error harmless beyond a reasonable doubt under AEDPA, "a federal court may not award habeas relief under § 2254 unless *the harmlessness determination itself* was unreasonable." Fry, 551 U.S. at 119. And a state-court decision is not unreasonable if "'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

Thus, it is not enough to afford relief in this situation if the federal habeas court merely finds a "reasonable possibility" that the error was harmful. Davis, 135 S. Ct. at 2198 (quoting Brecht, 507 U.S. at 637). Rather, relief is only available "if the federal court has grave doubt about whether a trial error of federal law had a substantial and injurious effect or influence in determining the jury's verdict." Id. at 2198 (internal quotation marks omitted) (quoting O'Neal v. McAninch, 513 U.S. 432, 436 (1995)). This conclusion, in turn, must be supported by a finding that the petitioner "was actually prejudiced by the error." Id. (quoting Calderon v. Coleman, 525 U.S. 141, 146 (1998) (per curiam)).

The record before me does not raise a "grave doubt" about the trial court's ruling. The construction-site superintendent saw petitioner in a white hooded sweatshirt at the site while the superintendent was talking to the victim; moments after he walked away, two other construction

3

workers saw a person wearing a white hooded sweatshirt attack the victim with a hammer. One of those two workers testified that he saw the attack from about 50 feet away from where he was standing at the base of the crane. He testified that he saw the assailant's whole body and face; he identified petitioner as the assailant at trial.

The other worker who saw the attack testified that he had seen a person wearing a white hooded sweatshirt at the site around the same time that the superintendent was talking to the victim. He testified that from his vantage point 50 feet away in the crane he was operating, he could see the assailant's white hooded sweatshirt but not his face. He identified petitioner as the assailant at trial based on his height and build. He testified that, when he realized what was happening, he yelled at his men to "get this guy," and petitioner, wearing a white hooded sweatshirt, ran into the housing project across the street from the construction site. Other construction workers apprehended petitioner and turned him over to the police. Petitioner had on a white hooded sweatshirt and was wearing a tool belt with a hammer at the time of his apprehension and arrest. The emergency-room doctor who treated the victim testified that the victim had been struck multiple times with a blunt object that was consistent with a hammer.

I agree with the Appellate Division that the trial court should have allowed defense counsel to ask the jury to think about why petitioner would have attacked the victim, since there was no evidence of any relationship between them or an attempted robbery. The absence of a reason for the attack would have supported petitioner's defense of misidentification or tended to show reasonable doubt. It seems that defense counsel's use of the word "motive" rather than saying "there was no reason" caused the prosecutor, and then the trial court, to focus on the elements of the crime rather than on the particular defense that was being urged.

4

However, any doubt about the effect of the error does not rise to the level required by the Supreme Court's harmless-error cases to obtain habeas corpus relief. The white hooded sweatshirt is an identifiable enough piece of clothing, the sequence of events as observed by eyewitnesses was short, and petitioner was apprehended with a hammer and tool belt immediately after the attack. These facts make it unlikely that a misidentification occurred.

Moreover, notwithstanding the trial court's too-limited ruling, defense counsel had abundant opportunity to argue his mistake defense. First, although the trial court sustained the objection to any reference to "motive," defense counsel had pointed out immediately before that, according to the victim's testimony, "there was no argument taking place between [the victim] and another man. He didn't see anyone and he wasn't involved in any type of argument with anyone." That argument was factually accurate and cited evidence the jury had already heard, so the absence of any reason for the attack was apparent. Defense counsel also stressed that the crane operator who saw the attack and raised the hue and cry had not, and at trial still could not, identify petitioner by his face, and the supervisor who did identify plaintiff did not see the attack. Moreover, defense counsel argued through the physical exhibits that the victim's injuries were less serious than one would expect from multiple hammer strikes. Finally, counsel emphasized that no blood was found on petitioner's hammer or on his tool belt when he was arrested, and that the blood on petitioner's sweatshirt was his own and not the victim's.

Regardless of whether I would agree with the Appellate Division's finding of harmlessness, I cannot conclude that its finding was unreasonable, and therefore any prejudice to petitioner was insufficient under federal law to warrant habeas corpus relief.

*B. Jury Instructions*

The Appellate Division's holding that this claim was "unpreserved for appellate review" erects a procedural bar prohibiting review in this Court. A federal court should not address the merits of a petitioner's habeas claim if a state court has rejected the claim on "a state law ground that is independent of the federal question and adequate to support the judgment." Lee v. Kemna, 534 U.S. 362, 375 (2002) (emphases omitted) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)). When a state court rejects a petitioner's claim because he failed to comply with a state procedural rule, the procedural bar may constitute an adequate and independent ground for the state court's decision. See, e.g., Johnson v. Lee, 136 S. Ct. 1802, 1803, 1805 (2016) (per curiam); Coleman, 501 U.S. at 729-30; Murden v. Artuz, 497 F.3d 178, 193 (2d Cir. 2007). State procedural grounds are only adequate to support the judgment and foreclose federal review if they are "firmly established and regularly followed" in the state. Murden, 497 F.3d at 192 (quoting Monroe v. Kuhlman, 433 F.3d 236, 241 (2d Cir. 2006)).

Further, if a state court rejects a specific claim on an adequate and independent state-law ground, then a federal court should not review the merits of the claim, even if the state court addressed the merits of the claim in the alternative. See Harris v. Reed, 489 U.S. 255, 264 n.10 (1989) ("[A] state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.").

It is well settled that New York's contemporaneous-objection rule, codified at New York Criminal Procedure Law § 470.05(2), is an independent and adequate state-law ground that ordinarily precludes federal habeas corpus review. See, e.g., Downs v. Lape, 657 F.3d 97, 104

6

(2d Cir. 2011). New York's contemporaneous-objection rule provides that a party seeking to preserve a claim of error at trial must lodge a protest to the objectionable ruling "at the time of such ruling . . . or at any subsequent time when the [trial] court had an opportunity of effectively changing the same." N.Y. Crim. Proc. Law § 470.05(2). This rule has been interpreted by New York courts to require, "at the very least," that any matter which a party wishes to preserve for appellate review have been "brought to the attention of the trial court at a time and in a way that gave [it] the opportunity to remedy the problem and thereby avert reversible error." People v. Luperon, 85 N.Y.2d 71, 78, 623 N.Y.S.2d 735, 738-39 (1995); see generally People v. Hicks, 6 N.Y.3d 737, 810 N.Y.S.2d 396 (2005).

The application of a procedural bar in this case is straightforward – the first state court that had the opportunity to consider this argument was the Appellate Division. It was well within firmly established New York law for the Appellate Division to decline to consider the unpreserved argument.

However, a federal court may still review on the merits a claim which is barred under state procedural rules if the petitioner can demonstrate both cause for the default and prejudice resulting from it, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. See Coleman, 501 U.S. at 750. The latter avenue, a miscarriage of justice, is demonstrated in the extraordinary case where a constitutional violation results in the conviction of an individual who is actually innocent of the underlying offense, or of the aggravating circumstances rendering that individual eligible for the death penalty. See Dretke v. Haley, 541 U.S. 386, 393 (2004).

The first avenue, cause for the default and prejudice from it, can be demonstrated with "a showing that the factual or legal basis for a claim was not reasonably available to counsel, . . . or that some interference by state officials made compliance impracticable . . . [or that] the procedural default is the result of ineffective assistance of counsel." Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994) (alteration and ellipses in original) (internal quotation marks omitted) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). Although, in some circumstances, ineffective assistance of counsel may constitute "cause" sufficient to avoid a procedural default, the ineffective-assistance claim must itself have been exhausted in the state court. Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000). To adequately exhaust a claim, a petitioner must have "fairly presented" the claim to the state court. DiSimone v. Phillips, 461 F.3d 181, 190 (2d Cir. 2006).

Although petitioner raised various claims of ineffective assistance of trial counsel in his *pro se* brief on direct appeal, he never contended that his trial counsel was ineffective for not challenging the jury instruction on motive.[1] He therefore cannot rely on ineffective assistance of counsel to avoid his procedural default on the jury-instruction claim. See Edwards, 529 U.S. at 451-52. Nor is there any miscarriage of justice from the refusal to reach this point. As set forth above, the facts presented a jury question as to whether petitioner was the perpetrator of the attack, and the jury's resolution of that question against him does not give this Court the ability to find him innocent.

The claim is therefore procedurally barred from federal habeas corpus review.

---

[1] Petitioner's trial counsel did raise this claim in a post-verdict motion. However, New York law is equally clear that this does not preserve the claim for appeal. See People v. Padro, 75 N.Y.2d 820, 821, 552 N.Y.S.2d 555, 555 (1990).

## II. Ineffective Assistance of Trial Counsel

In this proceeding, as in his *pro se* brief on direct appeal, petitioner asserts that his trial counsel was ineffective for various reasons. The Appellate Division rejected this claim on the merits. See Papas, 110 A.D.3d at 1103, 974 N.Y.S.2d at 263.

Under AEDPA, petitioner can only receive habeas corpus relief on such a claim if the state court's adjudication of it was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or was (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The decision of a state court is "contrary" to clearly established federal law within the meaning of § 2254(d)(1) if it is "diametrically different" from, "opposite in character or nature" to, or "mutually opposed" to the relevant Supreme Court precedent. Williams v. Taylor, 529 U.S. 362, 405 (2000) (quoting Webster's Third New International Dictionary 495 (1976)). Moreover, a state-court decision involves "an unreasonable application" of clearly established Federal law if the state court applies federal law to the facts of the case "in an objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141 (2005).

The Supreme Court has held that the AEDPA standard of review is extremely narrow and is intended only as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Ryan v. Gonzales, 568 U.S. 57, 75 (2013) (citation and internal quotation marks omitted). State-court decisions must "be given the benefit of the doubt," Felkner v. Jackson, 562 U.S. 594, 598 (2011) (per curiam) (quoting Renico v. Lett, 559 U.S. 766, 773 (2010)), and "even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable." Harrington, 562 U.S. at 102. Indeed, in Harrington, the Supreme Court went so far as to state that a habeas court may only "issue the

writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Id. This standard of "no possibility" of disagreement among "fairminded jurists" as to the existence of legal error is arguably the narrowest standard of judicial review in the law. Moreover, the Supreme Court has expressed a lack of patience with lower courts that view its pronouncements as permitting a substantial measure of flexibility in applying this standard. See, e.g., Parker v. Matthews, 567 U.S. 37, 41-48 (2012) (per curiam).

Petitioner's burden is doubly difficult because he must prevail not only under the narrow AEDPA standard set forth above, but also under the similarly narrow two-prong standard for ineffective assistance of counsel set out in Strickland v. Washington, 466 U.S. 668 (1984). Strickland's first prong requires him to show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms." Id. at 688. The court must apply a "strong presumption of competence" and "affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." Cullen v. Pinholster, 563 U.S. 170, 196 (2011) (citation and internal quotation marks omitted). The second prong requires petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." Harrington, 562 U.S. at 112. None of the three claims that petitioner raises meet the Strickland test, especially as viewed through its AEDPA gloss.

> A. *Counsel's Failure to Move for Dismissal or for the Court to Set Aside the Verdict as Contrary to the Evidence*

Petitioner first argues that his counsel was ineffective for failing to move to dismiss the indictment or to have the trial court set aside the verdict as contrary to the weight of the

10

evidence. He raises two points as to legal sufficiency: First, he argues that first-degree attempted assault requires that the assailant come at least "dangerously close" to completing the crime. Here, it was uncontroverted that the victim was assaulted, so if the jury found that petitioner was the one who did it, it clearly had sufficient evidence to convict him of attempted assault.

Second, petitioner contends that the evidence failed to show that he intended to "cause serious physical injury," as the statute requires. See N.Y. Penal L. § 120.10. This is a frivolous argument because hitting someone in the back of the head with a hammer three times seems sufficient under any construction of the statute. Moreover, the victim's injuries consisted of a large, open head wound with three bleeding lacerations oozing blood. The emergency-room treating physician testified that without treatment, the victim's injuries could have resulted in death, permanent paralysis, or other disability. The victim received fifteen staples in his head and was treated with antibiotics intravenously. Petitioner cites no authority for the proposition that these facts are insufficient for a jury to find that he intended serious physical injury. His counsel was not ineffective for failing to make a frivolous argument.[2]

### B. Counsel's Failure to Object to Prosecutorial Misconduct in Summation

Under federal law, a prosecutor has wide latitude in making her closing argument. See United States v. Casamento, 887 F.2d 1141, 1189 (2d Cir. 1989). Even where a prosecutor has made improper comments in summation, habeas relief is not warranted unless those remarks rendered the trial, as a whole, "fundamentally unfair." Darden v. Wainwright, 477 U.S. 168,

---

[2] Respondent's argument on this point is disingenuous. He contends that "[d]efense counsel did, in fact, move for an order of dismissal based on legally insufficient evidence at the close of the People's case, which was denied." The motion that counsel made was a general motion which, under New York law, would have been insufficient to preserve the arguments that petitioner contends his counsel should have made. See generally People v. Gray, 86 N.Y.2d 10, 629 N.Y.S.2d 173 (1995).

181-83 (1986). To be entitled to habeas relief, a petitioner must show "that he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict." Bentley v. Scully, 41 F.3d 818, 824 (2d Cir. 1994); see also Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) (holding that habeas relief is warranted only where the prosecution's claimed misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process"). In addition, the state courts' determination that petitioner's due-process rights were not violated by the prosecutor's closing argument is entitled to deference under AEDPA, as described above.

Petitioner contends that his trial counsel was ineffective for not objecting during summation when the prosecutor "vouched" for the credibility of several of her witnesses. She did no such thing. She simply marshaled the circumstantial evidence that supported the witnesses' credibility and explained to the jury how those circumstances bore on their credibility. It was precisely the converse of the argument that defense counsel had made, attacking the witnesses' credibility or otherwise seeking to limit the probative value of their testimony. See U.S. v. Praetorious, 622 F.2d 1054, 1060-61 (2d Cir. 1979) ("[W]hen the defense counsel have attacked . . . the credibility of the government [witnesses], the prosecutor is entitled to reply with rebutting language suitable to the occasion." (internal quotation marks and citations omitted)). At no point did the prosecutor ask the jury to accept her personal view of the witnesses' credibility. Trial counsel was neither objectively unreasonable in deciding not to object to proper argument, nor was petitioner prejudiced since such objections would have been overruled.

### C. Counsel's Lack of Investigation

Petitioner raised this third claim – ineffective assistance based on counsel's lack of investigation – on direct appeal, but New York law rarely permits it in that context, because the

direct appeal is confined to legal issues based on the trial-court record. See, e.g., People v. Terborg, 156 A.D.3d 1320, 1321, 67 N.Y.S.3d 730, __ (4th Dep't 2017); People v. Doggett, 146 A.D.3d 1172, 1173, 46 N.Y.S.3d 285, 286 (3rd Dep't 2017). A claim that further investigation by counsel would have revealed additional facts must be made outside the record in a collateral proceeding – which petitioner never brought – to show what trial counsel would have found.

Perhaps for this reason, petitioner's argument on this point is cursory. He does not say anything about: (1) what additional investigation his counsel should have undertaken; and (2) what his counsel would have found he undertaken such investigation. Since there was nothing in the record that even pertained to these questions, I cannot find that the Appellate Division's rejection of this claim was contrary to or an unreasonable application of Strickland and its progeny.

## CONCLUSION

The petition is denied and the case is dismissed. The Court issues a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) solely on the issue of the Appellate Division's harmless-error holding. Contrary to Appellate Division's holding, I do not think that the evidence was so overwhelming that the resolution of the harmless-error claim is obvious. This was essentially a single-witness identification case, with corroboration of other witnesses primarily by an article of clothing. I am also concerned that the trial court's ruling may have deterred defense counsel from making any further argument on the absence of any reason why petitioner would have attacked the victim. Petitioner has therefore made a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), consistent with the Second Circuit's liberal interpretation of "substantial" as "adequate to deserve encouragement to proceed

further." See Lucidore v. N.Y. State Div. of Parole, 209 F.3d 107, 112 (2d Cir. 2000). *In forma pauperis* status for appeal on this single issue is granted for the same reason.

The Clerk is directed to enter judgment accordingly.

**SO ORDERED.**

                                                                                              _____
                                                                                              U.S.D.J.

Dated: Brooklyn, New York
           February 22, 2018